N THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  05-cv-00669-PSF-PAC

JIM TATUM,

      Plaintiff(s),

v.

HAROLD (HAL) SIMPSON,
STEVEN J. WITTE,
HENRY DANIEL (DANNY) MARQUEZ,
JOHN SUTHERS,
TANYA T. LIGHT,
JOHN C. CYRAN,
PAUL L. BENINGTON,
DENNIS MAES, and
DAN CORSENTINO,

      Defendant(s).

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

Patricia A. Coan, United States Magistrate Judge

      Plaintiff, *pro se*, brings an action under 42 U.S.C. §1983 claiming that various state officials and a county sheriff violated his constitutional rights in connection with actions relating to his water rights and related state water court proceedings.  The following motions are pending and have been referred to the undersigned to issue a recommendation on disposition: (1) Plaintiff's Request for Injunction [filed June 13, 2005]; (2) Plaintiff's Motion for Leave to Amend Plaintiff's Request for Injunction [filed July 5, 2005]; (3) Plaintiff's First Amended Request for Injunction [filed July 5, 2005]; (4) Defendant Corsentino's Motion for Summary Judgment [filed July 11, 2005]; (5) State Defendants' <u>Amended</u> Motion to Dismiss [filed July 25, 2005]; (6) Plaintiff's Motion for Summary

Judgment Against Defendant Dan Corsentino [filed August 4, 2005]; (7) Plaintiff's Motion for Summary Judgment Against State Defendants [filed August 4, 2005]; and (8) Plaintiff's Verified Motion for Evidentiary Hearing . . . [filed August 22, 2005].  The motions are fully briefed.  I have determined that oral argument would not be  of material assistance.

I.

A.    Statutory Administration of Water Rights in Colorado

The Water Rights Determination and Administration Act, COLO.REV.STAT. ("C.R.S.") §37-92-101, *et seq.*, directs the State and Division Engineers to administer, distribute, and regulate the waters of the State of Colorado, and to issue orders to the owners or users of water rights when necessary for such administration. *See* C.R.S. §37-92-501, 502.   If a property owner fails to comply with an order issued pursuant to C.R.S. §37-92-502, the State and Division engineer are authorized to file a complaint with the water court in the division where the property is situated for an injunction and the issuance of penalties.  C.R.S. §37-92-503.

Section 37-84-112, C.R.S., requires owners of irrigation ditches, canals, flumes or reservoirs to erect and maintain in good repair suitable head gates and waste gates "sufficient to control the water at all ordinary stages."

B.    Plaintiff's Complaint

Plaintiff's pleadings in the federal and state courts contain the following relevant facts.  Plaintiff owns property in  Las Animas County and waters rights in the Purgatoire River, including the right to divert a certain amount of water from the River via the Dolores Duran ditch.

Defendants Simpson, Witte and Marquez are the State Engineer, the Division Engineer for Water Division 2, and the local water commissioner, respectively. Defendant Suthers is the Colorado Attorney General and defendants Cyran, Light and Benington are assistant state attorneys general. Defendant Maes, a state court judge, presides over the Division 2 water court in Las Animas County District Court. Defendant Corsentino is the Pueblo County Sheriff. Plaintiff sues the defendants in their official and individual capacities. Compl., at ¶3.

Plaintiff alleges that beginning in approximately 1990, defendants Marquez, Witte and Simpson retaliated against him for openly criticizing alleged illegal acts committed by defendant Marquez in the performance of his official duties. According to plaintiff, one such retaliatory action occurred when the defendant engineers claimed in a July 9, 2003 notice letter to plaintiff that defendant Marquez' field investigation had revealed that plaintiff lacked a controllable river head gate for the Dolores Duran ditch which was allowing plaintiff to divert water in excess of his decreed amount. Plaintiff was ordered to install a controllable river head gate or waste gate by November 3, 2003. When plaintiff failed to comply, defendants Witte and Simpson filed a complaint for injunctive relief in the Division 2 water court to prevent plaintiff from diverting water from the Purgatoire River.

Plaintiff alleges that defendants Simpson, Witte and Marquez falsely claimed to the state water court that plaintiff did not have a head gate or waste gate in place on the Dolores Ditch and that plaintiff was taking water in excess of his entitlement. Later, after being forced to admit the presence of the head gate on the ditch, defendants falsely claimed in the state court proceeding that the head gate was failing to control the water

3

flow, as required by state statute.

Plaintiff filed counterclaims against the state engineer defendants in the state action for unjust taking of his property and for abusing their official authority by filing a complaint against him that contained false allegations.

Judge Maes concluded that plaintiff was in violation of C.R.S. §37-84-112(1) based on his finding that plaintiff's head gate and waste gate on the Dolores Duran Ditch were not able to control the flow of water because the ditch had fallen into a state of disrepair.  *See* July 9, 2004 Order in *People of the State of Colorado,* ex. *rel., Harold D. (Hal) Simpson, et al., v. Jim Tatum,* Case No. 04CW24, District Court, Water Division 2, Colorado, attached to State Defendants' Amended Motion to Dismiss.  Judge Maes found that Mr. Tatum was diverting water in an amount greater than his decreed amount and granted the State's motion for a preliminary injunction.  *Id.*  Judge Maes ordered Mr. Tatum to install a new structure on the Dolores Duran ditch to control diversions from the Purgatoire River, in compliance with the engineers' July 9, 2003 Order.  *Id.*; September 14, 2004 Order in Water Division 2, Case No. 04CW24.  Judge Maes further ordered Mr. Tatum, in the alternative, to "breach a hole" in the Dolores Duran ditch so that all waters from the ditch were conveyed back to the Purgatoire River, without irrigation or other use by Mr. Tatum.  *See* July 9, 2004 Order in Water Division 2, Case No. 04CW24.  When plaintiff failed to comply with the July 9, 2004 Order after being granted an extension of time to do so, Judge Maes ordered plaintiff held in contempt and remanded plaintiff to the custody of the Pueblo County Sheriff.  *See* December 16, 2004 Order in Water Division 2, Case No. 04CW24.

Plaintiffs states that pursuant to Judge Maes' contempt order, he was held in the

4

Pueblo County jail for two days.  During his detention, he claims he was denied his prescribed medications and the breathing aids he needed for his diabetes and to recover from two open heart surgeries, in violation of his rights under the Eighth Amendment and the Fourteenth Amendment Due Process Clause.

On February 22, 2005, the state water court ordered the Las Animas County Sheriff to breach the Dolores Duran ditch to the Purgatoire River, pursuant to the court's July 9, 2004 Order, in an area where a new waste gate would eventually be installed. *See* February 22, 2005 Order in Water Division 2 Case No. 04CW24.  Judge Maes thereafter ordered that  Mr. Tatum not change conditions on the ditch as they existed upon the completion of the breaching of the ditch, or divert any water through the ditch to his real property, without prior approval of the Division Engineer.  *See* April 19, 2005 Order in Water Division 2 Case No. 04CW24.

Plaintiff appealed Judge Maes' Orders to the Colorado Supreme Court on December 3, 2004.[1]  *See* Opening Brief in Colorado Supreme Court Case No. 04SA382, filed July 9, 2005, at 6.  That appeal is pending.

In this §1983 action, Plaintiff claims that all of the defendants, except Judge Maes and Sheriff Corsentino, violated his Fourteenth Amendment due process rights by commencing a malicious and baseless action against him in the state water court to deprive plaintiff of his  right to divert water from the Purgatoire River to irrigate his property.  Plaintiff asserts that the regular practice of the state engineer's office is to adjust the amount of flow

---

[1]Mr. Tatum's motions to stay the state district water court proceeding while his appeal was pending were denied by the Colorado Supreme Court.  *See* February 22, 2005 and April 19, 2005 Orders issued in Water Division 2 Case No. 04CW24.

from a head gate if the flow exceeds the amount of the property owner's entitlement; however, defendants did not use the measuring and flow control devices on either the head gate or the waste gate to regulate any excess water flow in plaintiff's case.  Instead, defendants prosecuted plaintiff maliciously because of plaintiff's prior complaints about alleged illegal activities by defendants Simpson, Marquez and Witte in the performance of their duties.   Plaintiff also alleges that his due process rights were violated when the defendant state engineers presented false evidence to the court and when the Colorado Attorney General and the assistant state attorneys general suborned their perjury.  Plaintiff seeks compensatory damages for the loss of his water rights, in the amount of $30,000 per year from 2004 to the present.

Plaintiff further claims that defendants' actions in trespassing on his property, in damaging and removing his waste gate on the Dolores Duran Ditch, and in destroying the ditch so that water cannot flow in it, constitute an unlawful taking of plaintiff's property without just compensation in violation of the Fifth Amendment to the United States Constitution and the Colorado Constitution. Plaintiff also alleges that he was deprived of his property without due process of law in violation of the Fourteenth Amendment.  Plaintiff asks that the court order defendants to restore plaintiff's property and to compensate him for the period of time the property was wrongfully withheld, or to compensate him for the value of the destroyed waste gate  and loss of water rights.

II.

The State defendants (all defendants except Sheriff Corsentino) move to dismiss plaintiff's claims under Fed.R.Civ.P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction

and for failure to state a claim upon which relief can be granted.

A.    Standard of Review

The party bringing an action in federal court bears the burden of showing that the case falls within the court's subject matter jurisdiction. *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 512 (10th Cir. 1994).  Where the defendants' challenge to the court's subject matter jurisdiction is lodged as a facial attack on the complaint, the court must accept the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  If the defendant goes beyond the allegations of the complaint and challenges the facts upon which subject matter jurisdiction depends, the court may not presume the truthfulness of the plaintiff's factual allegations, but must resolve disputed issues of fact. *Id.* at 1003.  In such a case, the court's reference to documents outside the pleadings does not convert the Rule 12(b)(1) motion into a Rule 56 motion.  *Id.*

In reviewing the sufficiency of plaintiff's allegations under Fed.R.Civ.P. 12(b)(6), the court accepts plaintiff's well-pleaded factual allegations as true and resolves all reasonable inferences in plaintiff's favor.  *See Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991); *Bauchman v. West High School*, 132 F.3d 542, 550 (10th Cir. 1997)(internal citations omitted). Dismissal is appropriate only if  "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see, also, Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 586 (10th Cir. 1994); *Miller*, 948 F.2d at 1565.

*Pro se* pleadings are to be construed liberally.[2] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  A *pro se* litigant should be given a reasonable opportunity to remedy defects in his  pleadings if his factual allegations are close to stating a claim for relief.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be granted."  *Id.*  The court will not construct legal theories which assume facts that have not been pleaded, *see Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989), nor is the court obligated to "supply additional factual allegations to round out a plaintiff's complaint."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Plaintiff moves for summary judgment on his claims against the state defendants.  Summary judgment is appropriate under Fed.R.Civ.P. 56©) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

B.     Application of *Rooker-Feldman* Doctrine

Because plaintiff's claims arise from state water court proceedings, I first consider whether this court lacks subject matter jurisdiction over those claims under the *Rooker-Feldman* doctrine. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923), the Supreme Court held that lower federal courts do not have subject matter jurisdiction to hear

---

[2]Although plaintiff is *pro se*, defendants have represented that plaintiff is an attorney licensed to practice law in the state of Colorado.

claims actually decided by a state court.  The Court later extended the holding of *Rooker* to bar lower federal court review of claims that are "inextricably intertwined" with a state court judgment.  *See Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983).

The *Rooker-Feldman* doctrine prohibits "a party losing in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Crutchfield v. Countrywide Home Loans,* 389 F.3d 1144, 1148 (10th Cir. 2004)(internal quotations and citations omitted).

Here, it does not appear that any of the claims plaintiff asserts in this §1983 action were actually decided by the state water court.  Accordingly, the issue is whether the federal claims are inextricably intertwined with the state water court judgment.

A federal claim is inextricably intertwined with a state court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987)(Marshall, J. concurring).  Moreover, the federal claim is barred if "the injury alleged by the federal plaintiff resulted from the state court judgment itself," as opposed to being distinct from that judgment. *Kenmen Engineering v. City of Union,* 314 F.3d 468, 476 (10th Cir. 2002)(internal quotations and citation omitted).

The *Rooker-Feldman* bar protects all state court judgments, including those issued by state district courts which are pending appeal.  *See Kenmen Engineering*, 314 F.3d at 473.  In addition, the jurisdictional bar applies even when the federal-court plaintiff did not have an opportunity to litigate his claims in the state court proceeding.  *Id.*      Plaintiff

9

claims that the execution of the state water court's July 9, 2004 and February 22, 2005 Orders to breach the Dolores Duran ditch to prevent the flow of water from the Purgatoire River to plaintiff's property constituted an unlawful taking of his water rights in violation of the Fifth Amendment and the Colorado Constitution and deprived him of his property without due process of law.  Clearly, the state court judgment caused the injury for which plaintiff seeks redress.  Accordingly, I recommend finding that plaintiff's federal and state takings claims and his Fourteenth Amendment due process claim based on deprivation of property are inextricably intertwined with the state court judgment and, therefore, this court lacks jurisdiction to hear those claims under the *Rooker-Feldman* doctrine.

Plaintiff also asserts a claim against the state engineers, water commissioner, Colorado Attorney General and the state assistant attorneys general for malicious prosecution and for knowingly presenting false evidence during that prosecution.

State law provides the starting point for analyzing a claim for malicious prosecution under §1983. *Erikson v. Pawnee Cnty. Bd. of Cnt. Comm'rs*, 263 F.3d 1151, 1154 (10th Cir. 2001). In Colorado, one of the elements of a malicious prosecution claim is that the prior action ended in the federal-court plaintiff's favor.  *See* CO-JICIV 17:1 (4th ed); *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 503 (Colo. 2004).

Here, the state water court ruled in favor of the State and against the plaintiff. Plaintiff thus cannot prevail on his §1983 malicious prosecution claim unless this court concludes that the state court decision was erroneous.  Accordingly, I recommend finding that this court lacks jurisdiction over plaintiff's claim of malicious prosecution (including the presentation of false evidence to the state courts)  under the *Rooker-Feldman* doctrine

because that claim is inextricably intertwined with the state water court judgment.  *See Hall v. Martin,* 191 F.R.D. 617, 620-23 (D.Kan. 2000)(holding that *Rooker-Feldman* doctrine barred plaintiff's claim of malicious prosecution, which included allegations that defendants submitted false affidavits in a state court proceeding which the  state courts relied upon, because the federal claim could "succeed only to the extent that the state court wrongly decided the issue before it")(citing *Penzoil*, 481 U.S. at 25 (Marshall, J., concurring)); *Bukowski v. Hall*, 165 F.Supp.2d 674,677-78 (N.D.Ohio 2001)(holding that defendant's counterclaim for malicious prosecution arising from alleged false statements made against him by kidnapping and rape victim in criminal proceeding was barred by *Rooker-Feldman* because defendant could not prevail unless federal court voided his state court criminal conviction);  *Ellis v. CAC Financial Corp.*, 6 Fed.Appx. 765, 769 (10th Cir. 2001) (Unpublished) (concluding that plaintiff's claims of fraud and malicious prosecution, which were based, in part, on defendant's alleged perjury in state court proceeding, were barred by *Rooker-Feldman* because the  federal court could not resolve those claims without calling into question the state court judgment in favor of defendant); *LeCates v. Barker*, 242 F.3d 389, 2000 WL 1717184 (10th Cir. (Utah) 2000) (Unpublished) (holding that malicious prosecution claim was barred under *Rooker-Feldman* because federal court would be required to determine that state court judgment in defendant's favor was erroneous or void).[3]

---

[3]The *Ellis* and *Cates* decisions are cited in accordance with 10th Cir. Rule 36.3(B) and are attached to the Recommendation in accordance with 10th Cir. Rule 36(c).

I liberally construe plaintiff's pleadings as also asserting a claim that defendants Witte and Simpson initiated the state enforcement proceeding against him in retaliation for, and to chill, plaintiff's speech about alleged illegal activities by defendant Marquez, in violation of plaintiff's First Amendment rights.[4]   *See* Plaintiff's Response brief, at 5.   This claim fares no better than the others under *Rooker-Feldman.*   The relief plaintiff requests for the alleged unlawful retaliatory prosecution is for the court to order defendants to restore the section of the Dolores Duran ditch that was breached pursuant to Judge Maes' Order, to restore or replace the waste gate that was removed from the ditch, and to compensate plaintiff for damages (in the form of lost crops and grazing) resulting from the court-ordered breach which prevented water from flowing through the ditch to irrigate plaintiff's property. Essentially, plaintiff requests that this court place him back in the position he occupied prior to the state water court judgment.   Absent the state water court's order, the ditch would not have been breached, the waste gate would not have been removed or destroyed, and plaintiff would not be seeking injunctive and monetary relief in federal court.   Accordingly, Plaintiff's First Amendment retaliation claim is inextricably intertwined with the state water court judgment and is barred under *Rooker-Feldman.   See Kenmen*, 314 F.3d at 477.

To summarize, I recommend that plaintiff's claims against defendants Simpson, Witte, Marquez, Suthers, Light, Cyran, Benington and Maes be dismissed for lack of subject

---

[4]"An act taken in retaliation for the exercise of a constitutionally protected right is actionable under §1983 even if the act, when taken for a different reason, would have been proper." *DeLoach v. Bevers*, 922 F.2d 618, 620 (10th Cir.1990) (quotation omitted).

matter jurisdiction under the *Rooker-Feldman* doctrine.[5]  Plaintiff's motion for summary judgment on his claims against the State defendants should be denied.

Plaintiff's Request for [Preliminary] Injunction, Motion for Leave to Amend Plaintiff's Request for Injunction, and First Amended Request for Injunction should also be denied. Plaintiff asks the court to order the state defendants to replace plaintiff's waste gate on the Dolores Duran ditch, restore the section of the ditch that was breached pursuant to Judge Maes' order, and to enjoin the state defendants from any further interference with plaintiff's water rights.  This court lacks jurisdiction over plaintiff's request for preliminary injunctive relief under the *Rooker-Feldman* doctrine for the reasons discussed above.

III.

The parties have filed cross motions for summary judgment on plaintiff's claims against defendant Corsentino, the Pueblo County Sheriff.

The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  As stated previously, summary

---

[5]Although defendants did not raise the *Rooker-Feldman* doctrine as a jurisdictional bar to plaintiff's claim, issues of subject matter jurisdiction may be raised by the court *sua sponte.  State Farm Mut. Auto. Ins. Co. v. Narvaez,* 149 F.3d 1269, 1270-71 (10th Cir. 1998)("[I]nsofar as subject matter jurisdiction is concerned, it has long been recognized that a federal court must, sua sponte, satisfy itself of its power to adjudicate in every case and at every stage of the proceedings. . . .")(internal quotation omitted).

Defendants instead argue that this court should abstain from hearing plaintiff's claims under the doctrine of *Younger v. Harris,* 401 U.S. 37 (1971) because the state proceeding is still pending in the Colorado Supreme Court.  Application of *Rooker-Feldman* divests the federal district court of jurisdiction, while *Younger* abstention is invoked where  jurisdiction exists, but the court should decline to exercise it because of an ongoing state proceeding.  *See Kiowa Indian Tribe* of *Okla. v. Hoover,* 150 F.3d 1163, 1170 (10th Cir. 1998)(citing *Pennzoil,* 481 U.S. at 23 ("There is no occasion to decide if abstention would have been proper unless the District Court had jurisdiction.") (Marshall, J., concurring).  Accordingly, I do not reach the *Younger* issue.

Similarly, I need not address the State defendants' immunity arguments.

13

judgment is appropriate under Fed.R.Civ.P. 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 322.   When applying this standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. *Gray v. Phillips Petroleum*, 858 F.2d 610, 613 (10th Cir. 1988). To defeat a properly supported motion for summary judgment, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial. *Handy v. Price,* 996 F.2d at 1064, 1068 (10th Cir. 1993).

On cross motions for summary judgment the court may assume that no evidence other than that submitted by the parties need be considered; however, summary judgment is inappropriate if the court finds that disputes remain as to material facts. *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 124 F.3d 1321, 1323 (10th Cir. 1997)(internal citation omitted).

A.   The Facts

The following facts are undisputed.  Plaintiff was detained in the Pueblo County jail from December 13, 2004 to December 15, 2004, after being held in contempt of court by defendant Judge Maes.   (Compl., at 9;  Affidavit of Dan Corsentino, attached to Motion for Summary Judgment, at ¶2) )  Plaintiff's wife, Ann Tatum, avers that she spoke to Dr. David

14

Ora, the physician who treated inmates at the jail, the day plaintiff arrived and transmitted to jail staff, via facsimile, a list of thirteen medications prescribed for plaintiff, as well as information that plaintiff required a breathing machine supplemented with oxygen every night.  (*See* Affidavit of Ann Tatum, attached as Ex. A to Plaintiff's Sworn Response brief, and attached letter to Dr. Ora)  Plaintiff avers that when he was booked into the jail, he advised sheriff's deputies that he had undergone two open heart surgeries and radiation therapy for cancer treatment.  (Plaintiff's Sworn Response brief, at 2)  The medications prescribed for plaintiff were to treat a heart problem, diabetes, gout, high blood pressure, cancer and to prevent plaintiff from having a stroke.  (*Id.* at 2-3) The assisted breathing machine and additional oxygen was prescribed to relieve extra pressure on plaintiff's heart.  (*Id.* at 3)   Plaintiff states that he did not receive all of his prescribed medications or the breathing machine supplemented with oxygen during his detention.  (Plaintiff's Sworn Response, at 3)  On December 15, 2004, Ann Tatum sent a letter addressed to the Pueblo County Sheriff to the jail, via facsimile, complaining that plaintiff still had not received his prescribed medications or breathing machine with extra oxygen from the time he was booked into the jail two days earlier.  (Ann Tatum Affidavit, at 2, and attached Ex. AB) Mrs. Tatum did not speak directly with Sheriff Corsentino while her husband was detained in the Pueblo County jail.  (Tatum Affidavit, at 2)

Defendant Corsentino avers that, as Sheriff of Pueblo County, he seldom has knowledge of any specific individual incarcerated in the jail and rarely has personal contact with inmates.  (Corsentino Affidavit, at ¶¶7, 8,)  Corsentino states that he was not aware of plaintiff's detention in the Pueblo County jail from December 13, 2004 to December 15,

2004 and did not have any personal contact with plaintiff, plaintiff's wife, or anyone else acquainted with plaintiff regarding plaintiff's detention. (*Id.* at ¶¶9-11) The Sheriff further avers that he did not communicate with any of the sheriff's deputies or medical staff at the jail regarding plaintiff's care or medical treatment. (*Id.* at ¶¶12-13)

B.   Analysis

Mr. Tatum was not a convicted prisoner at the time of his detention.  His claim thus arises under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment.  Due process requires jail officials to provide pretrial detainees "humane conditions of confinement by ensuring . . . the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee [his] safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).  Because a pretrial detainee's due process right to humane conditions of confinement are at least as great as those afforded to convicted prisoners under the Eighth Amendment, I apply Eighth Amendment legal standards in analyzing plaintiff's claim. *See  Bell v. Wolfish, 441* U.S. 520, 535 n. 16 (1979); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.1998).

The Eighth Amendment is violated when a prison official acts with "deliberate indifference to [an inmate's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104-106 (1976).  A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)(quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)(internal quotation omitted)).

16

Deliberate indifference means that prison medical staff knew of the inmate's serious medical need, but intentionally disregarded an excessive risk of harm to the inmate, or, that prison guards or medical staff intentionally prevented the inmate from receiving prescribed treatment or intentionally delayed or denied his access to medical care. *Estelle,* 429 U.S. at 104-105; *Farmer v. Brennan*, 511 U.S. 825,  837 (1994); *Oxendine v. Kaplan*, 241 F.3d 1272, 1279 (10th Cir. 2001).

      1.   <u>Individual capacity claim</u>

Defendant Corsentino has asserted the qualified immunity defense for the claim asserted against him in his individual capacity. Qualified immunity shields public officials from civil damages liability if their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a public official raises the defense of qualified immunity, the plaintiff must first establish that the complained of conduct constitutes a violation of a constitutional or statutory right. *See Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003)(internal citation omitted).  If plaintiff shows a constitutional violation, the court next determines whether the constitutional right was clearly established at the time of the defendant's allegedly unlawful conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the plaintiff fails to satisfy either part of the bipartite inquiry, the court must grant the defendant qualified immunity.  *Smith*, 339 F.3d at 1211.  If the plaintiff establishes that defendant's conduct violated a clearly established right, the burden shifts to the defendant to prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Medina v. Cram*, 252 F.3d 1124, 1128(10th Cir. 2001)(internal

17

quotation omitted).

Assuming that plaintiff's medical conditions at the time of his detention in the Pueblo County jail constituted serious medical needs, I recommend finding that plaintiff has failed to point to evidence from which reasonable jurors could infer that defendant Corsentino was deliberately indifferent to those needs.

There is no evidence in the record to show that defendant Corsentino knew about plaintiff's need for prescribed medications and a breathing machine supplemented with extra oxygen during the plaintiff's detention.  It is not enough that the medical information was transmitted to unknown sheriff's deputies and jail medical personnel. Personal participation in a constitutional deprivation is an essential element of liability under §1983. *See Beedle v. Wilson*,  422 F.3d 1059, 1072 (10th Cir. 2005)(internal citation omitted); *Gagan v. Norton,* 35 F.3d 1473, 1476 n.4 (10th Cir. 1994)( "A supervisor may not be held liable in a §1983 action under the theory of respondeat superior")(citing *Monell v. Department of Social Serv.*, 436 U.S. 658, 691-95 (1978)).

Moreover, even if Sheriff Corsentino received the letter that Ann Tatum faxed to him at the Pueblo County Sheriff's Office on December 15, 2004 at some unknown time, plaintiff was released that day.  Plaintiff states that the breathing apparatus and supplemental oxygen were prescribed for him to use only at night while he was sleeping.  (Plaintiff's Sworn Response, at 2) Accordingly, at the time Sheriff Corsentino would have received Ann Tatum's letter on the day of plaintiff's release, plaintiff had no further need for the breathing machine and extra oxygen at the jail; plaintiff thus cannot show that Corsentino was deliberately indifferent to plaintiff's medical need.  Likewise, plaintiff does not state specific

facts to show that necessary medications were withheld from him after the Sheriff would have received Ann Tatum's letter on December 15, 2004, but before plaintiff was released that day. Plaintiff admits that he did receive some of the prescribed medications during his two-day detention. (Plaintiff's Sworn Response, at 3)

I recommend that defendant Corsentino be granted summary judgment based on qualified immunity on plaintiff's claims against him in his individual capacity. Plaintiff's motion for summary judgment should be denied.

2. Official capacity claim

Plaintiff's constitutional claim against Sheriff Corsentino in his official capacity is construed as a claim against the Pueblo County Board of County Commissioners. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985)(stating that an official capacity suit is "another way of pleading an action against an entity of which an officer is an agent"); *Myers v. Oklahoma County Board of County Commissioners*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998).

Pueblo County cannot be held liable in a §1983 action unless a County custom or policy was the "moving force" behind a constitutional deprivation. *Myers*, 151 F.3d at 1316 (citing *Monell*, 436 U.S. at 694); *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997). Alternatively, the County may be held liable for the actions or decisions of a County official who has final policy making authority for the County with respect to the challenged action. *See Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir. 2001)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-83 (1986)).

Here, even if a constitutional deprivation occurred, plaintiff does not state facts, or point to evidence, to show that the deprivation resulted from an unconstitutional County policy or custom. Indeed, plaintiff's complaint is devoid of even an allegation that the denial of prescribed medications, extra oxygen and a breathing machine was pursuant to an unconstitutional County policy or custom. Further, although Sheriff Corsentino is a final policymaker for the County with respect to conditions of confinement at the County jail, *see* C.R.S. §§17-26-102 and 103, plaintiff has failed to demonstrate that a genuine issue of material fact exists about whether defendant Corsentino acted with deliberate indifference to plaintiff's medical need for prescribed medications and a breathing machine with extra oxygen. Accordingly, the court should dismiss plaintiff's claim against defendant Corsentino is his official capacity, which is treated as a claim against Pueblo County. Plaintiff's Motion for summary judgment on that claim should be denied.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that Plaintiff's Request for Injunction [filed June 13, 2005], Plaintiff's Motion for Leave to Amend Plaintiff's Request for Injunction [filed July 5, 2005], and Plaintiff's First Amended Request for Injunction [filed July 5, 2005] be **DENIED**. It is

**FURTHER RECOMMENDED** that the State Defendants' Amended Motion to Dismiss [filed July 25, 2005] be **GRANTED** as follows: Plaintiff's claims against defendants Simpson, Witte, Marquez, Suthers, Light, Cyran, Benington and Maes should be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. It is

**FURTHER RECOMMENDED** that Defendant Corsentino's Motion for Summary

20

Judgment [filed July 11, 2005] be **GRANTED**.  It is

**FURTHER RECOMMENDED** that  Plaintiff's Motion for Summary Judgment Against Defendant Dan Corsentino [filed August 4, 2005] and Plaintiff's Motion for Summary Judgment Against State Defendants [filed August 4, 2005] be **DENIED**.  It is

**FURTHER RECOMMENDED** that Plaintiff's Verified Motion for Evidentiary Hearing . . . [filed August 22, 2005] be **DENIED**.  It is

**FURTHER RECOMMENDED** that this action be **DISMISSED.**

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated October 17, 2005.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge